# Dennis J. Harley, Appellant, *v.* The Meshoppen Water Company.

*Waters—Diversion of stream—Water Companies—Preliminary injunction.*

A preliminary injunction restraining a water company from using a six-inch pipe where it formerly used a three-inch pipe in taking water from a stream will not be continued if it appears that the mere use of the larger pipe will not materially decrease the flow of water in the stream to the injury of a lower riparian owner.

Argued Feb. 27, 1896. Appeal, No. 159, Jan. T., 1896, by plaintiff, from decree of C. P. Wyoming Co., in equity, book 3, page 22, dissolving a preliminary injunction. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Motion to continue preliminary injunction.

The facts appear by the opinion of DUNHAM, P. J., which was as follows :

In this case a bill in equity, with accompanying injunction affidavits and bond, was presented to us, and upon the case, as thus made out, we granted a preliminary injunction, restraining the defendant company from " replacing the pipes now laid and in use by ones of any larger size, or in any manner interfering with the natural flow of the water in the Little Meshoppen Creek, or any of its tributaries above the tannery, race and waterway of Dennis J. Harley or in any manner diverting said water away from said tannery, and from taking from said creek or any of its tributaries any larger quantity of water than it could have taken under the system of said Meshoppen Water Company as operated on or before August 2d, 1895."

The case came on to be heard upon the motion to continue the preliminary injunction thus granted until final hearing, and upon this application a large number of witnesses were heard upon both sides. From the evidence taken, we find the facts to be substantially as follows, viz : The plaintiff owns and operates a small tannery in the borough of Meshoppen, wherein he tans raw hides for strings, or lacers for belts, and hides for

robes.   This tannery is situated below the dam of the defend-
ant company, along an artificial water way or race, which has
been in use for a very long period to supply water to mills prior
to the construction of the tannery, and derives whatever of
water supply is needed to operate it from this race.

The defendant has, for the last twenty-two years or more,
supplied the inhabitants of the borough of Meshoppen with
water, by means of a dam across the Little Meshoppen creek,
some one and a half miles above this tannery of the plaintiff,
and then by pipes conveying water from this pond or pool to a
reservoir, and then by means of smaller pipes or mains, leading
the water through the streets of Meshoppen, to which pipes or
mains the citizens have smaller pipes to convey the water to
their premises, so that they can get water by turning a faucet
and allowing the water to run as needed.

The pipe leading from the creek to the reservoir for a long
period has been a three inch one, and this, the evidence in the
case establishes, was and is of sufficient size to convey sufficient
water from the creek to supply all ordinary demands of the
people, and at the same time keep the reservoir full with a con-
siderable quantity of water continually flowing over the waste-
way or overflow of the reservoir, and either returning to the
creek above the tannery of the plaintiff, or being absorbed by
the ground before reaching the creek.

Sometime during the summer of 1895, the defendant com-
pany entered into an agreement with the authorities of the
borough of Meshoppen, in which it was agreed that the water
company should increase very materially the size of its mains
or pipes, leading from the reservoir through the various streets
of the borough.   Also that said water company should replace
its present supply pipe leading from the pool of the dam across
Little Meshoppen creek to the reservoir with a six-inch pipe
so arranged that in case of fire the supply of water needed for
the purpose of extinguishing it could be derived direct from
the pool of the dam, instead of the reservoir, thus giving an
additional head of some forty or fifty feet.

The larger pipes through the town have been put in ; but the
one leading from the creek has not yet been changed.

It is not proposed by the defendant and, as we understand,
not even asserted by the plaintiff, that the size of the pipes lead-

ing from the street mains to the various customers are to be changed in size.

Upon the hearing, considerable evidence was given as to the quantity of water flowing in the Little Meshoppen creek, and upon its gradual diminution during the last forty years. The quantity flowing in this creek during the past season, which the evidence establishes, and which is known to the court, as being the dryest season in many years, has been variously estimated by the witnesses. One witness, however, testifies that he ascertained the amount flowing in the stream on Friday previous to the hearing, which he testifies was as low as it has been during the season, by actual measurement, and that in the stream, above the dam of the defendant one hundred and fifty gallons of water per minute were flowing, and at the same time below the dam the flow was one hundred and forty-one gallons per minute, which we find to be the facts in the case. He also testifies that at the same time the reservoir was overflowing the same as usual; thus showing that the amount of water diverted from the stream by the defendant was nine gallons per minute, which includes the amount used by the town and also the amount that flowed over the waste-way of the reservoir.

The plaintiff contends, that if the defendant is allowed to replace its present three-inch pipe, leading from the creek to the reservoir, with a six-inch pipe, it will enable the defendant to take four times the amount of water from the creek it can take by its present pipe; and that therefore we should prevent the laying of this pipe by injunction. There can be no doubt of the correctness of the first part of the above proposition; and were we satisfied that by the putting in of this six-inch pipe the quantity of water diverted from the natural channel of the creek would be increased in any such proportion, or were we satisfied, that by the putting in of this pipe the usual flow of the water over the premises of the plaintiff would be materially decreased, we would have no question as to our duty in the premises. The many plain and conclusive authorities cited by the learned counsel for the plaintiff clearly show that we would be in duty bound to restrain from so doing by injunction. This we may add we have never for one moment doubted from the time the preliminary injunction was granted in this case. From the evidence in the case, we not only are not satisfied that the

putting in of the pipe proposed will materially decrease the flow of water in the usual channels across the premises of the plaintiff, but we are satisfied it will not so decrease the flow of water. The argument that by means of the increased size of pipe the defendant has it in its power to work injury to the plaintiff, we think would not justify the court in exercising the extraordinary power of granting an injunction. What the plaintiff has a right to insist upon, and what the court is required to see to, is that the flow of water over the premises of the plaintiff shall not be materially decreased; but he has no right, nor the court has no right to dictate to the defendant the manner nor the means by which it may divert the quantity of water it has been accustomed to divert from the stream; if it sees fit or is so disposed it may use a ditch as large as a canal; but it can only take the usual quantity through it.

The evidence shows that the full capacity of the pipe from the dam is never intended to be used, except for very limited spaces, and at what it is to be hoped will be long intervals, that is in case of fire. It would certainly take very strong probability of irreparable injury to the plaintiff and of frequent occurring injuries to him to induce a chancellor to interfere by injunction to restrain any one from connecting with a natural stream of water, to protect a community from fire. It would be much more just and equitable, as we view the matter, that the plaintiff should recover by actions at law for the damages he may suffer, at what will surely be very long intervals, and of very infrequent occurrence, than that the community be made to suffer by enjoining persons from putting in the means of protecting them, that may never occasion injury to any one.

We are clearly of the opinion that the danger of injury to the plaintiff in this case is not sufficiently imminent to justify us in continuing the preliminary injunction heretofore granted, during the pendency of this case. Should it be made to appear to the court upon the final hearing, that the defendant was actually diverting or intended to divert the water from its natural course, so it would materially decrease its flow over the premises of the plaintiff, we can and will then restrain it from so doing, and can make such order in the premises as to fully protect the rights of the plaintiff.

Now, December 23, 1895, this case having been heard upon

evidence of witnesses produced before the court, on application to continue the preliminary injunction heretofore granted, until final hearing, it is ordered and decreed that the preliminary injunction heretofore granted be dissolved, until final hearing.

*Error assigned* was above decree.

*Charles E. Terry* and *James W. Piatt*, for appellant.—Equity will assume jurisdiction where the complaint charges existing and threatened injuries from an unlawful interference with a water course: Bolton v. Swartz, 4 Montg. 198; Reid v. Anderson, 6 Lanc. 26; Shenandoah Co.'s App., 2 W. N. C. 46; Sterling's App., 111 Pa. 35; Curwensville Boro. App., 129 Pa. 74; Weiss v. Oregon I. & S. Co., 13 Oregon, 496.

A riparian proprietor is entitled to an injunction to restrain the threatened unlawful diversion of the waters of a stream flowing through his land, without first establishing his right at law by recovering a judgment in damages: Lux v. Haggin, 69 Cal. 255; Lord v. Water Co., 135 Pa. 122; 29 Am. & Eng. Ency. of Law, 15; 28 Am. & Eng. Ency. of Law, 955; Haupt's App., 125 Pa. 222.

*W. E. Little* and *E. J. Jorden*, *C. A. Little* with them, for appellee.—A court of equity will not interfere by injunction to prevent an injury merely nominal or theoretical in its nature, although an action at law might be maintained for it: Powers' App., 125 Pa. 175; Am. & Eng. Ency. of Law, 786; Biddle v. Ash, 2 Ashmead, 211; Easton v. R. W. Co., 2 Pa. C. C. 639; Andrews v. Stefansky, 5 Kulp, 339; Rhea v. Forsyth, 37 Pa. 503; C. & M. Co. v. Pottsville Water Co., 54 Pa. 164; Coal Co.'s App., 54 Pa. 183; Rhodes v. Dunbar, 57 Pa. 274; Farmers R. R. Co. v. R. O. C. & P. R. R., 53 Pa. 224; Minnig's App., 82 Pa. 373.

PER CURIAM, March 16, 1896:

We are far from being convinced that the learned court below erred in refusing to continue the preliminary injunction.

We purposely abstain from any expression of opinion as to any of the questions now presented, or that are likely to arise as the case progresses to final hearing and decree. It is neither

necessary nor desirable that we should do otherwise. When the case is developed and the facts are fully established, questions, which may now appear to be of some importance, may be entirely eliminated.

Decree affirmed and appeal dismissed with costs to be paid by the appellant.